**TAULER SMITH, LLP**
Robert Tauler (SBN 241964)
626 Wilshire Boulevard, Suite 550
Los Angeles, CA 90017
Telephone: (310) 590-3927
e-Mail: rtauler@taulersmith.com

**KJC LAW GROUP, A.P.C.**
Kevin J. Cole (SBN 321555)
9701 Wilshire Blvd., Suite 1000
Beverly Hills, CA 90212
Telephone: (310) 861-7797
e-Mail: kevin@kjclawgroup.com

Attorneys for Plaintiff
*Gurmit Deol*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GURMIT DEOL, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>ADP, INC., a New Jersey Corporation; and DOES 1 to 10, inclusive,<br><br>    Defendants. | CASE NO.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE CALIFORNIA INVASION OF PRIVACY ACT (CAL. PENAL CODE §§ 631, *et seq.*)**<br><br>(***JURY TRIAL DEMANDED***) |

Plaintiff Gurmit Deol ("Plaintiff"), individually and on behalf of all others similarly situated, complains and alleges as follows based on personal knowledge as to himself, on the investigation of his counsel, and on information and belief as to all other matters. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth in this complaint, after a reasonable opportunity for discovery.

## THE PARTIES

1. Plaintiff Gurmit Deol ("Plaintiff") is and at all relevant times mentioned was a citizen of Orange County, California (within the Central District of California).

2. Defendant ADP, Inc. ("Defendant" or "ADP") is a New Jersey corporation with its principal place of business in Roseland, New Jersey. ADP provides payroll and HR software and services through its website https://www.adp.com/.

3. Plaintiff does not know the true names or capacities of the persons or entities sued as DOES 1 to 10, inclusive, and therefore sues such Defendants by such fictitious names. Plaintiff is informed and believes, and upon such information and belief alleges, that each of the DOE Defendants is in some manner legally responsible for the damages suffered by Plaintiff and the Class members as alleged in this Complaint. Defendants shall together be referred to as "Defendants" or "ADP."

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because the total matter in controversy exceeds $5,000,000 and there are over 100 members of the proposed class. Further, at least one member of the proposed class is a citizen of a State within the United States and at least one defendant is the citizen or subject of a foreign state.

5. The Central District of California has specific personal jurisdiction over ADP. Specific jurisdiction over a non-resident defendant exists where: (1) "[t]he non-resident defendant . . . purposefully direct[s] [it]s activities or consummate[s] some transaction with the forum or resident thereof; or perform[s] some act by which [it] purposefully avails [it]self of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;" (2) the claim is one that "arises out of or relates to" the defendant's activities in the forum state; and (3) the exercise of jurisdiction comports with "fair play and substantial justice, i.e. it must be reasonable." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). The plaintiff need only establish the first two prongs, while it is the defendant's burden to "present a compelling case" that the exercise of jurisdiction would not be reasonable. *Id.*

6. **Purposeful Availment.** Under the first prong of the three-part test, "purposeful availment" includes both purposeful availment and purposeful direction, which are two distinct concepts. *Id.* Where a case sounds in tort, as here, courts employ the purposeful direction test. Purposeful direction requires the defendant have "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1142 (9th Cir. 2017) (citing *Schwarzenegger*, 374 F.3d at 802). On information and belief, ADP does a substantial amount of business in California, and—as relevant here—regularly engages in chats with individuals in California through the chat box feature on its website which, as explained below, constitutes an illegal form of surveillance. In other words, ADP employs an illegal surveillance scheme directed at and harming California residents, including Plaintiff.

7. **Claim Arising Out of Action in the Forum Prong.** Under the second prong of the three-part specific jurisdiction test, personal jurisdiction exists where, as here, the claim "arises out of or relates to" the defendant's activities in the forum

state. Courts in the Ninth Circuit use a "but for" test to determine whether the claim "arises out of" the nonresident's forum-related activities. In other words, the test is satisfied if the plaintiff would not have suffered loss "but for" defendant's activities. *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995). Here, ADP's contact with the forum—employing an illegal surveillance scheme directed at California residents—is the basis of its violations of the California Invasion of Privacy Act ("CIPA"). But for ADP's contact with the forum, Plaintiff would not have suffered harm.

8. **Venue.** Venue is proper in the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1391 because ADP:

    a) is authorized to conduct business in this District and has intentionally availed itself of the laws and markets within this District;

    b) does substantial business within this District;

    c) is subject to personal jurisdiction in this District because it has availed itself of the laws and markets within this District; and the injury to Plaintiff occurred within this District.

## GENERAL ALLEGATIONS

9. ADP is the proprietor of https://www.adp.com/, an online platform that offers companies and businesses help with payroll, benefits and insurance, HR, and compliance services. Customers from across the country, including California residents, access and use ADP's website to explore and purchase products and services offered by ADP.

10. During a browsing session on ADP's website, Plaintiff utilized the chat box feature. However, Plaintiff was not informed that his conversations were being recorded and exploited for commercial surveillance purposes without his consent. ADP's deceptive and invasive practices violate the privacy rights of its customers.

11. CIPA prohibits both wiretapping and eavesdropping of electronic communications without the consent of all parties to the communication. Compliance with CIPA is simple, and a vast majority of website operators comply by conspicuously warning visitors that their conversations are being recorded, or if third parties are eavesdropping on them.

12. However, ADP ignores CIPA. ADP's actions are not incidental to the act of facilitating e-commerce; rather, ADP's actions are contrary to industry norms and the legitimate expectations of consumers, including their reasonable expectation of privacy.

13. In the context of ADP's website, an iFrame (or Inline Frame) is a code that embeds content from another website—in this case, Drift—within a web page. However, this code intercepts the inquiries that consumers believe are being sent directly to ADP and diverts them to Drift.com:

```css
.drift-conductor-item iframe {
  color-scheme: light only;
  border: none !important;
  background: transparent !important;
  width: 100% !important;
  height: 100% !important;
  max-width: 100% !important;
}

.drift-conductor-item.with-transition {
  -webkit-transition: opacity .5s ease, -webkit-transform .5s ease;
  transition: opacity .5s ease, -webkit-transform .5s ease;
  -o-transition: opacity .5s ease, -o-transform .5s ease;
  -moz-transition: opacity .5s ease, transform .5s ease, -moz-transform .5s ease
  transition: opacity .5s ease, transform .5s ease;
  transition: opacity .5s ease, transform .5s ease, -webkit-transform .5s ease,
}
```

14. Once Drift gains access to the user's information, it stores it for its own purposes.

15. ADP fails to inform its website users that their communications are being monitored and stored using an "event listener," as seen below:

///

///

```
▶ ☁ img.en25.com              -        })
▼ ☁ js.drifttt.com            -      }
  ▶ 📁 conductor/assets       -        , ei = function attachEvents() {
  ▼ 📁 include/170008170000   -          document.addEventListener(Je.CLEAR_EVENT_Q, Yo),
     📄 u3ade2tpn6nh.js       -          document.addEventListener(He.API_READY, Xo),
                              -          document.addEventListener(He.READY, Zo),
▶ ☁ ml314.com                 -          document.addEventListener(Je.ALL_FRAMES_READY, Jo),
▶ ☁ pixel.mathtag.com         -          document.addEventListener(Je.DEBUG_INIT, Qo)
▶ ☁ pnapi.invoca.net          -      }
                              -        , ti = function isHeadlessBrowser() {
                              -          try {
                              -            var e = /headless/i.test(navigator.userAgent);
```

16. Drift also shares the data it collects and stores with ADP, which in turn, adds the data to the existing profiles it has surreptitiously collected from its users. According to its own stated disclosures, ADP collects a wide range of personal information from website users and consumers, including personal identifiers, device information, browser information, commercial information, operating system information, location details (such as GPS address and IP address); and from this, ADP may deduce additional demographic details like gender and age, various details about website usage, inferences, and other information.

17. Moreover, Drift's terms of service explicitly state that it will collect personal and identifying information and that the information is disclosed to third parties for business purposes. This commercial use of personal information is not disclosed to chat box users on ADP's website.

18. Visitors would be shocked and appalled to know that ADP secretly records those conversations and pays third parties to eavesdrop on them in real time to be "targets" for non-descript mercantile campaigns. ADP should not be permitted to acquire such extensive personal information from unsuspecting consumers who visit their website merely to make a purchase, such as upgrading a payroll system. This blatant disregard for consumer privacy is unacceptable and warrants appropriate scrutiny and intervention.

19. Within the past year, Plaintiff used the chat box feature on ADP's website. But ADP did not inform Plaintiff, or any of the Class Members, that he

CLASS ACTION COMPLAINT

was not actually communicating with ADP at all when chatting online at its website. ADP does not disclose its relationship with Drift at all, or that ADP is aiding, abetting, and paying third parties like Drift, which is recording and commoditizing their communications using the seemingly harmless chat box feature. This sort of feature—because it is seemingly innocuous and appears to occur on ADP's website—would never give rise to the suspicion that it is really a means to collect data and subvert privacy rights.

20. ADP did not obtain the Class Members' express or implied consent to wiretap or allow third parties to eavesdrop on visitor conversations, nor did the Class Members know at the time of the conversations that ADP was secretly wiretapping them and allowing third parties to eavesdrop on them.

## CLASS ACTION ALLEGATIONS

21. Plaintiff brings this action on behalf of himself and all persons similarly situated pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following class:

> All persons in the United States who, within the statute of limitations period, communicated with Defendant via the chat feature on Defendant's website using cellular or landline telephony, and whose communications were recorded and/or eavesdropped upon without prior consent.

22. The above-described class of persons shall hereafter be referred to as the "Class." Excluded from the Class are any and all past or present officers, directors, or employees of ADP, any judge who presides over this action, and any partner or employee of Class Counsel. Plaintiff reserves the right to expand, limit, modify, or amend this class definition, including the addition of one or more subclasses, in connection with his motion for class certification, or at any other time, based upon, among other things, changing circumstances and/or new facts obtained during discovery.

23. In the alternative, Plaintiff seeks certification of the following class pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure:

> All persons in California who, within the statute of limitations period, communicated with Defendant via the chat feature on Defendant's website using cellular or landline telephony, and whose communications were recorded and/or eavesdropped upon without prior consent.

24. **Numerosity**. The Class is so numerous that joinder of all members in one action is impracticable. The exact number and identities of the members of the Class is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, but on information and belief, Plaintiff alleges that there are thousands of members of the Class, if not more.

25. **Typicality**. Plaintiff's claims are typical of those of other members of the Class. As a person who visited Defendant's website and whose electronic communications were recorded, intercepted and eavesdropped upon, Plaintiff is asserting claims that are typical of the Class.

26. **Adequacy of Representation**. Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class. Plaintiff has retained attorneys who are experienced in the handling of complex litigation and class actions, and Plaintiff and his counsel intend to prosecute this action vigorously. Plaintiff has no antagonistic or adverse interests to those of the Class.

27. **Existence and Predominance of Common Questions of Law or Fact**. Common questions of law and fact exist as to all members of the Class that predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary among members of the Class, and which may be determined without reference to the individual circumstances of any member of the Class, include, but are not limited to, the

following:

    a) Whether Defendant caused electronic communications from Class Members with the website to be recorded, intercepted, and/or monitored;

    b) Whether Defendant aided and abetted a third-party in eavesdropping on such communications;

    c) Whether Plaintiff and the Class Members are entitled to statutory penalties; and

    d) Whether Class Members are entitled to injunctive relief.

28. **Superiority**. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the Class is impracticable. Requiring each individual class member to file an individual lawsuit would unreasonably consume the amounts that may be recovered. Even if every member of the Class could afford individual litigation, the adjudication of at least thousands of identical claims would be unduly burdensome to the courts. Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues.

29. By contrast, the conduct of this action as a class action, with respect to some or all of the issues presented, presents no management difficulties, conserves the resources of the parties and of the court system, and protects the rights of the members of the Class. Plaintiff anticipates no difficulty in the management of this action as a class action. The prosecution of separate actions by individual members of the Class may create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other members of the Class who are not parties to such adjudications, or that would substantially impair or impede the ability of such non-party Class members to

protect their interests.

30. **Ascertainability**. Upon information and belief, ADP keeps extensive computerized records of the communications it facilitates through its website. ADP has one or more databases through which a significant majority of members of the Class may be identified and ascertained, through which notice of this action is capable of being disseminated in accordance with due process requirements.

31. The California Class also satisfies each of the class action requirements set forth above. The allegations set forth above with regards to the Class, therefore, apply equally to the California Class.

**CLAIMS FOR RELIEF**

**First Cause of Action**

**Violation of the California Invasion of Privacy Act**

**Cal. Penal Code § 631(a)**

**(By Plaintiff Against Defendants on Behalf of the Class)**

32. Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

33. Section 631(a) of California's Penal Code imposes liability upon any entity that "by means of any machine, instrument, or contrivance, or in any other manner . . .

i) intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system; or

ii) willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent

from, or received at any place within this state; or

iii) uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section."

34. Here, Defendant has violated the third prong.

35. Section 631 of the California Penal Code applies to internet communications and thus applies to Plaintiff's electronic communications with Defendant's website. "Though written in terms of wiretapping, Section 631(a) applies to Internet communications. It makes liable anyone who 'reads, or attempts to read, or to learn the contents' of a communication 'without the consent of all parties to the communication.' Cal. Penal Code § 631(a)." *Javier v. Assurance IQ, LLC*, No. 21-16351, 2022 WL 1744107, at *1 (9th Cir. May 31, 2022).

36. The software embedded on Defendant's website to record and eavesdrop upon the Class's communications qualifies as a "machine, instrument, or contrivance, or . . . other manner" used to engage in the prohibited conduct alleged herein.

37. At all relevant times, Defendant aided, abetted, and even paid third parties to eavesdrop upon such conversations.

38. Plaintiff and the Class Members did not expressly or impliedly consent to any of Defendant's actions.

39. Defendant's conduct constitutes numerous independent and discreet violations of Cal. Penal Code § 631(a), entitling Plaintiff and the Class Members to injunctive relief and statutory damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Gurmit Deol prays for relief and judgment in favor of himself and the Classes as follows:

A. For an order certifying that the action be maintained as a class action, that Plaintiff be designated the class representative, and that undersigned counsel be designated as class counsel.

B. For an order declaring that Defendant's conduct violates CIPA.

C. For an order of judgment in favor of Plaintiff and the Class against Defendant on the cause of action asserted herein.

D. For an order enjoining Defendant's conduct as alleged herein and any other injunctive relief that the Court finds proper.

E. For statutory damages pursuant to CIPA.

F. For prejudgment interest.

G. For all other relief that would be just and proper as a matter of law or equity, as determined by the Court.

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of himself and the Classes, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all claims so triable.

DATED: December 5, 2023         Respectfully submitted,

**KJC LAW GROUP, A.P.C.**

By: */s/ Kevin J. Cole*

Attorneys for Plaintiff
*Gurmit Deol*